Filed 1/23/26  Moses v. Rok Drinks CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFF MOSES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ROK DRINKS LTD., et al., <br><br> Defendants and Respondents. | B339392 <br><br> (Los Angeles County Super. Ct. No. BC718405) |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie Bowick, Judge.  Reversed and remanded.

Taylor-Copeland Law, James Taylor-Copeland and Max Ambrose, for Plaintiff and Appellant.

Law Offices of Jason A. Pollack, Jason A. Pollack, for Defendants and Respondents.

Plaintiff Jeff Moses appeals from postjudgment orders awarding attorney fees to defendants Rok Drinks Ltd. (Rok Drinks), Rok Stars PLC (Rok Stars) (together, Rok Defendants), and Jonathan Kendrick. Moses also appeals from an order denying his request for attorney fees. We reverse the orders and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Moses agreed to sell a majority interest in a wine company to Rok Drinks. The agreement was memorialized in a Memorandum of Understanding (MOU). The MOU included an arbitration clause which provided: "In the event of a dispute between the Parties regarding this MOU, the dispute will be finally resolved by neutral arbitrator. . . . The arbitrator SHALL award costs including arbitration fees and reasonable attorney's fees to the prevailing party."

Moses sued the Rok Defendants in 2018 for breach of contract and several other causes of action. The complaint alleged that the Rok Defendants wrongfully obtained his assets and refused to pay him his rightful share of profits. Moses amended his complaint to add Jonathan Kendrick, the co-founder and chairman of the Rok Defendants, as a defendant. The operative complaint brought only noncontractual claims against Kendrick.

The court granted Kendrick's motion for judgment on the pleadings, reasoning that the complaint did not allege facts sufficient to support that Kendrick was personally liable or liable under an alleged alter ego theory. The court dismissed the claims against Kendrick with prejudice.

Four claims against the Rok Defendants proceeded to a jury trial. The jury found the Rok Defendants liable for breach of

2

an implied-in-fact contract, fraud, and negligent misrepresentation, and awarded Moses $587,500 in damages. It found the Rok Defendants not liable for breach of a written contract.

After trial, the Rok Defendants moved for attorney fees. The motion relied on Civil Code section 1717,[1] which provides that in an action "on a contract . . . the party prevailing on the contract" is entitled to attorney fees, even if he or she was not a party to the contract. The motion asserted that the Rok Defendants were the prevailing parties "on a contract" because they defeated Moses's breach of contract claim.

The trial court granted the Rok Defendants' motion for attorney fees. It reasoned that the Rok Defendants were the prevailing party because they prevailed on the only cause of action " 'on a contract,' " i.e., the breach of a written contract claim. The court concluded that the other claims that were litigated at trial were irrelevant because they were not actions " 'on a contract.' "

Moses also requested attorney fees. His motion argued that the MOU required the court to award attorney fees to the party prevailing overall on the contractual and noncontractual claims that proceeded to trial. The trial court denied Moses's motion, incorporating by reference the analysis in its order awarding fees to the Rok Defendants.

Kendrick also requested attorney fees pursuant to section 1717. Although the complaint did not allege that Kendrick breached a written contract, Kendrick's motion argued that he was entitled to attorney fees because he defeated Moses's alter ego theory, which would have exposed Kendrick to liability for

---

[1] Undesignated statutory references are to the Civil Code.

3

the Rok Defendants' alleged breach of the MOU.  The court agreed with Kendrick's argument and granted his fee request.

Moses timely appealed.

## DISCUSSION

Moses argues that the trial court erred by awarding attorney fees to defendants and denying his fee request. Specifically, Moses asserts that the trial court misinterpreted the attorney fee clause in the MOU and misapplied section 1717.  For the reasons discussed herein, we agree and reverse.

### I.    Standard of review

An appellate court ordinarily reviews an award of attorney fees after trial for abuse of discretion.  (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)  However, where, as here, the appeal challenges the legal basis for the trial court ruling by challenging its interpretation of a contract and the application of law to undisputed facts, our review is de novo.  (*Ibid.*)

### II.    The attorney fee provision in the MOU encompasses noncontractual claims arising from any dispute "regarding" the MOU

#### A.    *Legal principles*

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."  (Code Civ. Proc., § 1021.)  "If a contractual attorney fee provision is phrased broadly enough . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims:  '[P]arties may

4

validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).)

In litigation based on a contract, a nonparty to the contract may be entitled to attorney fees pursuant to section 1717.[2] However, " '[b]efore section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee agreement.' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.) "If the attorney fee provision does encompass noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is greater, in the sense of most accomplishing its litigation objectives, whether or not that party prevailed on a contract cause of action." (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992 (*Maynard*).)

To determine whether a contract permits the prevailing party to recover attorney fees for noncontractual claims, we "apply traditional rules of contract interpretation." (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.) "Accordingly, we first consider the mutual intention of the parties at the time the contract providing for attorney fees was formed. (Civ. Code, § 1636.) Our initial inquiry is confined to the writing alone." (*Mountain Air*, at

---

[2]     Section 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

5

p. 752.) If the meaning of the contractual language is unambiguous, we apply that meaning. (*Ibid*.) We interpret contracts de novo. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

### B. The attorney fee provision in the MOU

The MOU provides: "In the event of a dispute between the Parties regarding this MOU, the dispute will be finally resolved by neutral arbitrator. . . . The arbitrator SHALL award costs including arbitration fees and reasonable attorney's fees to the prevailing party."[3] The parties agree that attorney fees may be recovered if they were incurred during " 'a dispute between the Parties regarding this MOU.' "

Moses argues that this phrase must be interpreted broadly to include any contractual or noncontractual claim relating to or concerning the MOU. We agree. The word "dispute" " 'is a . . . general term that includes any conflict or controversy,' including but not limited to 'a conflict giving rise to an action.' " (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1249 (*GoTek*).) The term " 'regarding' " is also broad. It means " 'WITH RESPECT TO: Concerning.' (Webster's New Internat. Dict. (3d ed.1993) p. 1991.)" (*Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1369, fn. 10.)

Similar language in attorney fee provisions has been interpreted to encompass both contract and tort claims. (*GoTek*, *supra*, 3 Cal.App.5th at p. 1249 [" 'relating to this agreement' "]; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25

---

[3] The parties chose to litigate their dispute, and they agree that the prevailing party in the litigation was entitled to attorney fees.

6

Cal.App.4th 1827, 1831 (*Moallem*) [same]; *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277 [" '*in connection with* this Agreement' "]; *Thompson v. Miller* (2003) 112 Cal.App.4th 327, 332, 337 ["dispute under" a contract]; *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 160 [" 'arising out of this agreement' " encompassed fraud claims].) And in a parallel context, an agreement to arbitrate "disputes 'regarding' " a contract encompassed "both tort and contractual claims as long as the claims are rooted in the relationship created by the contract." (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1096.)

Citing *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 (*Exxess*), respondents argue that the MOU only permits recovery of attorney fees based on claims to " 'enforce the terms of the contract' " or to " 'declare rights thereunder.' " These are quotes from the contract at issue in *Exxess*, which has no bearing on our interpretation of the MOU. Respondents similarly assert that the MOU only permits recovery of attorney fees " 'incurred to enforce [the] contract.' " This language comes from section 1717. As we have discussed, before we consider whether section 1717 applies, we must interpret the attorney fee clause in the first instance, and section 1717 does not guide our analysis. (*Maynard, supra*, 216 Cal.App.4th at p. 990.) Respondents also contend that the court was within its "discretion" to interpret the phrase " 'regarding this MOU' " as applying solely to contractual claims. But "we do not defer to the trial court's interpretation of the disputed phrase" in a contract, because our review is de novo. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.) Respondents otherwise do not offer any contrary interpretation of the MOU,

7

nor have they identified any legal authority analyzing similar contractual language.

We conclude that the phrase "dispute between the Parties regarding this MOU" encompasses both contractual and noncontractual claims, so long as they relate to the MOU. With this interpretation in mind, we turn next to the dispute between Moses and the Rok Defendants.

## II. Moses was the prevailing party in his dispute with the Rok Defendants[4]

Moses proceeded to a jury trial against the Rok Defendants on claims for breach of a written contract, breach of an implied contract, fraud, and negligent misrepresentation. To determine which party prevailed in the "dispute between the Parties regarding [the] MOU," we must assess which of these claims were "regarding" the MOU.

There is no dispute that the written contract claim, based on the MOU itself, was "regarding this MOU." The implied-in-fact contract claim was based in part on "[t]he terms and negotiation of the MOU" and "the compensation set forth in the MOU." It also alleged that the Rok Defendants agreed to pay Moses $250,000 under the implied contract, which is the amount he was owed under the MOU.[5] Similarly, the claims for fraud

---

[4]    Rok Stars was not a party to the MOU. No party has argued that Rok Stars's nonsignatory status has any impact on this appeal. We assume without deciding that the Rok Defendants may be treated the same for purposes of our analysis.

[5]    Respondents argue that the implied contract claim is not "regarding" the MOU because Moses argued, and the trial court

8

and negligent misrepresentation both alleged that the Rok Defendants falsely represented that they would pay Moses $250,000 plus a monthly fee, i.e., the monetary terms of the MOU. These causes of action all stem from a dispute over the Rok Defendants' failure to comply with the terms of the MOU, meaning the claims that proceeded to trial were "regarding" the MOU. The prevailing party on those claims, overall, was entitled to attorney fees.

The jury returned a split verdict. It found the Rok Defendants liable for breach of an implied contract, fraud, and negligent misrepresentation, but also found that the Rok Defendants did not breach a written contract. However, the jury awarded Moses $587,500, and the Rok Defendants took nothing. Code of Civil Procedure section 1032 specifies that the " 'Prevailing party' includes the party with a net monetary recovery" in a lawsuit. That party is entitled to attorney fees if authorized by contract. (Code Civ. Proc., § 1033.5, subd. (a)(10); *Santisas*, *supra*, 17 Cal.4th at pp. 606–609.) Thus, despite the split verdict, Moses was the prevailing party because he obtained a net monetary recovery. (Code Civ. Proc., § 1032, subd. (a)(4); *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1199.)

Citing section 1717, respondents argue that the Rok Defendants prevailed because they defeated the sole claim for breach of a written contract. For purposes of section 1717, the

---

concluded, that the implied contract was necessarily separate from the MOU. But as we have discussed, the phrase "regarding this MOU" is broad enough to encompass claims that merely relate to the MOU. The implied contract included several of the same terms as the MOU; it related to and was therefore "regarding" the MOU.

prevailing party is "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) But section 1717 only applies when the contract at issue "specifically provides" for attorney fees "incurred to enforce [a] contract." (§ 1717, subd. (a).) Section 1717 is narrowly applicable, and does not "supersede or limit the broad right of parties pursuant to Code of Civil Procedure section 1021 to make attorney fees agreements." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342.) The parties to the MOU broadly agreed that attorney fees incurred by the prevailing party in any dispute "regarding" the MOU would be recoverable, and that agreement—not section 1717—governs our analysis.

*Maynard*, *supra*, 216 Cal.App.4th 984 is instructive. There, the plaintiff sued the defendant for breach of contract and several torts. The contract provided that the prevailing party in any dispute was entitled to attorney fees. (*Id.* at p. 989.) The plaintiff won a net monetary recovery based on a negligence claim, but the factfinder found for the defendant on all contract-based claims. (*Ibid.*) The court awarded attorney fees to the plaintiff, and the appellate court affirmed. It reasoned that when "the attorney fee provision does encompass noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is greater . . . whether or not that party prevailed on a contract cause of action." (*Id.* at p. 992.) The court rejected the defendant's argument that section 1717 applied, reasoning that the statute does not "authorize[ ] an award to a party who has prevailed in defending a breach of contract cause of action but has been held liable on other related causes of action." (*Maynard*, at pp. 990, 993–994.) The court also rejected the defendant's contention that he could obtain fees

10

incurred in defending against the contract claims, even while the plaintiff recovered fees on its tort claims. (*Id*. at p. 994.) It reasoned that this result was untenable because "there may be no more than one prevailing party with respect to the resolution of a single dispute, regardless of the number of theories of recovery that were advanced." (*Id*. at p. 995.)

Like the plaintiff in *Maynard*, Moses brought claims against the Rok Defendants for breach of contract and several torts. The MOU broadly allows for recovery of attorney fees based on any contractual or noncontractual dispute regarding the contract. Moses won a net monetary recovery. As such, Moses was the prevailing party on the claims "regarding" the MOU, and he was entitled to attorney fees. Under these circumstances, section 1717 did not authorize a fee award to the Rok Defendants, even though they successfully defended against the claim for breach of a written contract.

The orders awarding attorney fees to the Rok Defendants and denying Moses's fee request are reversed, and the matter remanded so that the court may determine the appropriate amount of attorney fees to which Moses is entitled based on his dispute with the Rok Defendants.[6]

---

[6] Because we reverse the order granting the Rok Defendants' motion for attorney fees, we do not reach the parties' arguments regarding the reasonableness of the award or the appropriateness of a deduction under section 1717, subdivision (c).

### III. Kendrick was the prevailing party in his dispute with Moses, but he is not entitled to attorney fees pursuant to section 1717

Because this case involves multiple parties, we must separately assess what party, if any, was entitled to attorney fees based on the dispute between Moses and Kendrick. (*Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 45 (*Burkhalter*).)

Kendrick obtained a judgment on the pleadings on all claims against him, and the court dismissed those claims. Kendrick is the prevailing party in his dispute with Moses because Kendrick is "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4); *Santisas*, *supra*, 17 Cal.4th at p. 606.)

Kendrick was not a party to the MOU and could not claim contractual attorney fees. The trial court nonetheless concluded that he was entitled to attorney fees under section 1717, which provides "a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.)

Moses argues that Kendrick was not entitled to fees under section 1717 because Moses did not bring a breach of contract claim against Kendrick.[7] We agree.

---

[7] Respondents argue that Moses should be estopped from raising this point, but they fail to cite any legal authority in support of this position. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 [appellant's burden is to support arguments with "citations to authority"].)

12

Section 1717 sometimes allows a nonparty to a contract to collect attorney fees incurred in an action "on a contract." But the phrase " 'on a contract' " does not encompass all claims "arising out of or related to" the contract. (*Moallem*, *supra*, 25 Cal.App.4th at p. 1830.) Rather, "section 1717 applies only to actions that contain at least one contract claim." (*Santisas*, *supra*, 17 Cal.4th at p. 615; *Exxess*, *supra*, 64 Cal.App.4th at p. 708 ["section 1717 does not apply to tort claims"].) Although we have determined that many of Moses's claims were "regarding" the MOU, we must separately assess whether any of his claims against Kendrick were "on a contract."

Moses brought claims against Kendrick for promissory estoppel, fraud, negligent misrepresentation, unfair business practices under the Unfair Competition Law (UCL), and intentional and negligent interference with prospective economic relations. A fraud action is not on a contract. (*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 366.) Nor is a claim for promissory estoppel. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 249.) " '[A]n action for negligent misrepresentation is not an action to enforce the provisions of a contract,' " and is not on a contract within the meaning of section 1717. (*Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596, 620.) A UCL claim also is not on a contract. (*Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 108.) And although the parties have not identified any authority directly addressing claims for intentional and negligent interference with prospective economic relations, tort claims generally are not on a contract within the meaning of section 1717. (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 408.)

Respondents argue that Kendrick may nonetheless recover reciprocal attorney fees under section 1717 because the operative complaint alleged that he was the Rok Defendants' alter ego. Thus, although Moses did not bring a breach of contract claim against Kendrick, respondents contend that Kendrick could have been liable for breach of contract if the alter ego allegation had been accepted. We disagree. The operative complaint did not bring a breach of contract claim against Kendrick. Unless Moses amended the complaint or brought a separate action against Kendrick, there was no way that Kendrick could have been held liable for breach of contract, even if the court had accepted Moses's alter ego theory.

Respondents cite several cases in which attorney fees were awarded to nonsignatory alter egos, but each is distinguishable. In *347 Group, Inc. v. Hawkins* (2020) 58 Cal.App.5th 209, the plaintiff sued a corporation and an individual for breach of contract, and alleged that the individual was an alter ego. (*Id.* at p. 212.) Although the individual was not a party to the contract, he was permitted to collect attorney fees under section 1717. (*347 Group,* at p. 215.) But unlike in *347 Group*, Moses did not name Kendrick as a defendant in his breach of contract claim.

In *MSY Trading Inc. v. Saleen Automotive, Inc.* (2020) 51 Cal.App.5th 395, the plaintiffs obtained a judgment on a breach of contract claim and then sought to enforce the judgment against an alter ego. (*Id.* at p. 398.) Although the alleged alter ego was not a signatory to the contract, the court concluded that he was entitled to attorney fees under section 1717, reasoning that "a postjudgment, independent action to establish alter ego liability for a judgment on a contract is itself an action on the contract." (*MSY Trading,* at p. 403.) Similarly, in *Westwood Homes, Inc. v.*

14

*AGCPII Villa Salerno Member, LLC* (2021) 65 Cal.App.5th 922, the plaintiffs won an arbitration award and obtained a judgment on claims under a set of covenants, conditions, restrictions, and easements, which included a prevailing party attorney fee provision. (*Id.* at p. 925.) The plaintiffs moved to amend the judgments to add two alter ego judgment debtors. The court denied the motions and also denied the alleged alter egos' motions for attorney fees. (*Id.* at p. 926.) On appeal, the court determined that the alleged alter egos were entitled to section 1717 attorney fees under *MSY Trading* at page 404. But these cases are inapposite, because Moses did not seek to enforce a judgment against Kendrick based on a breach of any contract.

Because Moses did not bring a breach of contract claim against Kendrick, section 1717 does not apply. (*Santisas*, *supra*, 17 Cal.4th at p. 615.) Kendrick has not identified any other basis to affirm the order awarding him attorney fees. The order must be reversed.[8]

---

[8] On appeal, Moses argues generally that he was the prevailing party in the underlying litigation. However, the prevailing party in the dispute between Moses and Kendrick must be examined separately from the dispute between Moses and the Rok Defendants. (*Burkhalter*, *supra*, 19 Cal.App.5th at p. 45.) To the extent Moses means to assert that he prevailed in his dispute with Kendrick, we reject the argument as forfeited, because Moses has not articulated any reasoned argument to support it. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court will not develop appellant's arguments].)

15

## DISPOSITION

The orders awarding attorney fees to the Rok Defendants and to Kendrick are reversed. The order denying Moses's motion for attorney fees is also reversed, and the matter is remanded for the trial court to calculate Moses's attorney fees. Moses is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.